SO ORDERED: September 21, 2012.



_____
**Anthony J. Metz III
United States Bankruptcy Judge**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| IN RE: ) | | CASE NO. 11-10696-AJM-7 |
| ) | | |
| ERIK JOEL ROBINSON, ) | | |
| ) | | |
| DEBTOR. ) | | |
| ) | | |
| _____ ) | | |
| ) | | |
| MIKE SHERMAN, ) | | |
| ) | | |
| PLAINTIFF, ) | | |
| ) | | ADVERSARY PROCEEDING |
| ) | | NO.12-50043 |
| vs. ) | | |
| ) | | |
| ERIK JOEL ROBINSON, ) | | |
| ) | | |
| DEFENDANT. ) | | |
| _____ ) | | |

**FINDINGS OF FACT, CONCLUSIONS OF LAW, AND
AMENDED ENTRY OF DEFAULT JUDGMENT**

1

The Plaintiff filed his Complaint to Determine Nondischargeability of Certain Debt Pursuant to 11 U.S.C. §§523(a)(2), (4) and /or (6) on February 22, 2012.  The Court entered Default Judgment on May 10, 2012, in favor of the Plaintiff, Mike Sherman ("Mike"), and against Defendant, Erik Joel Robinson ("Erik"), in an amount to be determined at a damages hearing.  That damages hearing was held on August 27, 2012 wherein Mike appeared in person and by his counsel, Robert Scott-Grimm.  Erik failed to appear.

The Court heard the testimony and has reviewed the pleadings and now makes its findings and conclusions with respect to damages, pursuant to Fed. R. Bankr. P. 7052.

### *Findings of Fact*

1. At all relevant times, Erik was the Managing Partner of Creative Real Estate Solutions, L.P. ("CRES") and the owner and president of 3 Oaks Property Group ("3 Oaks") and had authority to act on behalf of both CRES and 3 Oaks.

### *The 46th Street Property*

2. On January 31, 2007, Mike loaned CRES and Erik $59,000 to purchase property located at 6646 East 46th Street, Indianapolis, IN 46228 ("the 46th Street Property").  CRES and Erik in return executed a promissory note in the amount of $59,000 in favor of Mike dated January 31, 2007. ("the "46th Street Note"). [1]

3. The 46th Street Note allegedly was secured by a mortgage on the 46th Street Property as the 46th Street Note provided:

---

[1] The 46 Street Note, along with the other notes that are the subject of this proceeding, were signed by Erik only in his personal capacity.  Despite CRES and 3 Oaks being identified as "makers" in the body of some or all of the notes, Erik did not sign the notes in his representative capacity for either CRES or 3 Oaks.

2

      This note is secured by the following collateral: 6646 East 46th Street, Indianapolis, IN, 46228, pursuant to that certain mortgage dated at January 31, 2007, which mortgage terms and conditions are incorporated herein by reference.

4. No such mortgage in favor of Mike existed because neither CRES nor Erik ever provided Mike with a mortgage securing the 46th Street Property. In fact, after executing the 46th Street Note, CRES executed a mortgage on the 46th Street Property in favor of Community Bank. Neither CRES nor Erik ever informed Mike that the 46th Street Property was mortgaged to Community Bank instead of to Mike.

5. Neither CRES nor Erik informed Mike that the real estate taxes on the 46th Street Property were delinquent and that the property was eligible for sale at a 2010 Marion County, Indiana tax sale.

### *The Ada Lane Property*

6. On April 30, 2008, Mike loaned CRES and Erik $100,000 to purchase property located at 314 Ada Lane, Beech Grove, IN 46107 (the "Ada Lane Property"). CRES and Erik in return executed a promissory note in the amount of $100,000 in favor of Mike dated April 30, 2008 ("the "Ada Lane Note").

7. The Ada Lane Note allegedly was secured by a mortgage on the Ada Lane Property as the Ada Lane Note provided:

This note is secured by the following collateral: 314 Ada Lane, Beech Grove, Indiana 46107, pursuant to that certain mortgage dated at April 30,l 2008, which mortgage terms and conditions are incorporated herein by reference.

8. No such mortgage in favor of Mike existed because neither CRES nor Erik ever provided Mike with a mortgage securing the Ada Lane Property. In fact, after

3

    executing the Ada Lane Note, CRES and 3 Oaks executed a mortgage on the Ada Lane Property in favor of KBD, Inc.  Neither CRES nor Erik ever informed Mike that the Ada Lane Property was mortgaged to KBD, Inc. instead of to Mike.

9. Neither CRES nor Erik informed Mike that the real estate taxes on the Ada Lane Property were delinquent or that the property was eligible for and was sold at 2009 Marion County, Indiana tax sale.

## *The Somerset Property*

10. On June 27, 2008, Mike loaned CRES and Erik $80,000 to purchase property located at 473 South Somerset, Indianapolis, IN 46241 (the "Somerset Property").  CRES and Erik in return executed a promissory note in the amount of $80,000 in favor of Mike dated June 27, 2008 ("the "Somerset Note").

11. The Somerset Note allegedly was secured by a mortgage on the Somerset Property as the Somerset Note provided:

    This note is secured by the following collateral: 473 South Somerset, Indianapolis, IN 46241, pursuant to that certain mortgage dated at June 27, 2008, which mortgage terms and conditions are incorporated herein by reference.

12. No such mortgage in favor of Mike existed because neither CRES nor Erik ever provided Mike with a mortgage securing the Somerset Property.

13. Neither CRES nor Erik informed Mike that the real estate taxes on the Somerset Property were delinquent and that the property was eligible for sale at a 2010 Marion County, Indiana tax sale.

4

### *The Perry Property*

14. On November 23, 2009, Mike loaned CRES, 3 Oaks and Erik $42,000 to purchase property located at 3633 W. Perry, Indianapolis, IN 46221 (the "Perry Property"). CRES, 3 Oaks and Erik in return executed a promissory note in the amount of $42,000 in favor of Mike November 23, 2009 ("the "Perry Note").

15. The Perry Note was allegedly was secured by a mortgage on the Perry Property as the Perry Note provided:

    This note is secured by the following collateral: 3363 W. Perry, Indianapolis, IN, 46221, pursuant to that certain mortgage dated at November 23, 2009, which mortgage terms and conditions are incorporated herein by reference.

16. No such mortgage in favor of Mike existed because neither CRES, 3 Oaks nor Erik ever provided Mike with a mortgage securing the Perry Property. In fact, after executing the Perry Note, CRES, and 3 Oaks executed a mortgage on the Perry Property in favor of KBD, Inc. Neither CRES, 3 Oaks, nor Erik ever informed Mike that the Perry Property was mortgaged to KBD, Inc. instead of to Mike.

17. All funds that Mike loaned to CRES, 3 Oaks and Erik were deposited into one bank account. Erik, CRES, and 3 Oaks did not use the funds Mike loaned to purchase and rehabilitate the specific properties for which Mike loaned the funds, but instead used the funds to secure and rehab other properties.

18. The 46th Street Note, the Ada Lane Note, the Somerset Note and the Perry Note (collectively, "the Notes") all were payable "on demand" or if no demand was made, they were payable no later than 24 months after they had been executed.

5

However, Erik, individually and on behalf of CRES and 3 Oaks, made interest only payments to Mike through the end of December 2010 on the Notes. Erik, CRES, and 3 Oaks accepted money from subsequent investors to fund these interest payments for a period of time.

19. Eventually, Erik was unable to obtain funds from investors and failed to pay Mike any amounts due on the Notes, January 1, 2011.

## *Conclusions of Law*

1. Exceptions to discharge under §523 are "to be construed strictly against the creditor and liberally in favor of a debtor." *In re Scarlata*, 979 F.2d 521,524 (7th Cir. 1992. A creditor that brings a §523 action seeking a determination of nondischargeability bears the burden of proving all the elements of the statute by a preponderance of the evidence. *Grogan v. Garner*, 498 U.S. 279, 289-90; 111 S.Ct. 654, 661; 112 L.Ed.2d 755 (1991).

2. Mike seeks a determination that the debt owed to him by Erik is nondischargeable under Sections 523(a)(2), (a)(4) and (a)(6). Despite Erik's failure to respond to Mike's complaint, a default judgment is not a matter of right in nondischargeability proceedings simply because a defendant has failed to respond to the plaintiff's complaint. Rather, a plaintiff must prove a prima facie case before judgment by default is entered. See, *Mega Marts, Inc. v. Trevisan (In re Trevisan)*, 300 B.R. 708 (Bankr. E. D. Wis. 2003). The Court has awarded default judgment to Mike on the basis that Mike has established a prima facie

case for nondischargeability under at least one of the sections alleged in his complaint.

## §523(a)(2)(A)

3. Under §523(a)(2)(individual debtor shall not be allowed a discharge for any debt "for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by (A) false pretenses, a false representation, or actual fraud..." .

4. Section 523(a)(2)(A) list three separate grounds for dischargeability: actual fraud, false pretenses and false representation.  Although many courts have applied the same test to all three grounds, the Seventh Circuit has distinguished between the three grounds and has formulated two different tests, one for the "false pretenses" and "false representation" grounds and another for the "actual fraud" ground.  *In re Scarpello*, 272 B.R. 691, 699-700 (Bankr. N. D. Ill. 2002); citing *McClellan v. Cantrell*, 217 F.3d 890, 894 (7th Cir. 2000).

5. To prevail on a nondischargeability claim under the "false pretenses" or "false representation" grounds set forth in §523(a)(2)(A), a creditor must prove *all* of the following elements: (1) the debtor obtained money, property or services through a false representation of fact, (2) which the debtor (a) either knew to be false or made with such reckless disregard for the truth as constitute a willful misrepresentation and (b) made with intent to deceive; and ( 3) the creditor justifiably relied on the false representation to his detriment.  *Ojeda v. Goldberg*, 59 F.3d 712, 716-17 (7th Cir. 2010). *Scarpello*, 272 B.R. at 700.

6. "False pretenses" include "implied misrepresentations or conduct intended to create and foster a false impression". *Mem'l Hospital v. Sarama (In re Sarama)*, 192 B.R. 922, 927 (Bankr. N. D. Ill. 1996). "False pretenses" do not necessarily require overt misrepresentations. "Instead, omissions or a failure to disclose on the part of a debtor can constitute misrepresentations where the circumstances are such that omissions or failure to disclose create a false impression which is known by the debtor". *Id* at 928.

7. A "false representation" is an express misrepresentation that can be shown by the debtor's written statement, spoken statement or conduct. *Scarpello,* at 700. "A debtor's failure to disclose pertinent information may be a false representation where the circumstances imply a specific set of facts and disclosure is necessary to correct what would otherwise be a false impression. *Deady v. Hanson*, (*In re Hanson*, 432 B.R. 758, 772 (Bankr. N. D. Ill. 2010), citing, *Trizna & Lepri v. Malcolm (In re Malcolm),* 145 B.R. 259, 263 (Bankr. N. D. Ill. 1992).

8. "Actual fraud" is broader than misrepresentation in that neither a debtor's misrepresentation nor a creditor's reliance is necessary to prove nondischargeability under the "actual fraud" prong of §523(a)(2). *McClellan*, 217 F.3d at 893; *Scarpello*, 272 B.R. 701. Rather, "actual fraud" is defined as "any deceit, artifice, trick or design involving direct and active operation of the mind used to circumvent and cheat another" which includes "all surprise, trick, cunning, dissembling, and any unfair way by which another is cheated". *McClellan*, 217 F.3d at 893 (citations omitted). In such cases, a creditor must

    prove (1) a fraud occurred; (2) the debtor intended to defraud the creditor and (3) the fraud created the debt that is the subject of the nondischargeability action. *McClellan*, 217 F.3d at 893; *Scarpello*, 272 B. R. at 701; *Hanson*, 432 B.R. at 772.

9. A creditor must also prove the debtor acted with the intent to deceive under all prongs of §523(a)(2)(A). A debtor's intent to deceive is measured by his or her subjective intention at the time the representation was made. *Scarpello*, 272 B.R. at 700. "Because direct proof of fraudulent intent is often unavailable, fraudulent intent may be inferred from the surrounding circumstances". *Hanson*, 432 B.R. at 773.

10. Finally, a creditor seeking nondischargeability under §523(a)(2)(A) must show causation between the debtor's acts and the creditor's resulting injury by proving that the creditor "justifiably relied" on the debtor's false pretense, false representation or fraud. *Fields v Mans*, 516 U.S. 59, 74-75, 116 S.Ct. 437, 133 L.Ed.2d 351 (1995). "Justifiable" reliance is an intermediate level of reliance which is less stringent than "reasonable" reliance but more stringent than "reliance in fact". *Id.* at 71. "Justifiable" reliance requires only that the creditor did not "blindly [rely] upon a misrepresentation the falsity of which would be patent to him if he had utilized his opportunity to make a cursory examination or investigation" and imposes no duty on the creditor to investigate unless the falsity of the representation is readily apparent. *Id* at 70-72. "Justifiable "

reliance is not measured from the objective person standard, but rather from the experiences and characteristics of the particular creditor. *Id* at 71.

### *§523(a)(4)*

11. Under §523(a)(4), an individual debtor shall not be allowed a discharge for any debt "for fraud or defalcation while acting in a fiduciary capacity, embezzlement or larceny".

12. There are three possible avenues of recovery under this statute. "Fraud or defalcation while acting in a fiduciary capacity" calls for the debtor to owe a fiduciary duty to the creditor. Whether the debtor was acting in a fiduciary capacity is a question of federal law. *O'Shea v. Frain (In re Frain)*, 230 F.3d 1014,1017 (7th Cir. 2000). Generally, an express trust and the intent to create a trust relationship is adequate to find that the debtor is a fiduciary. But the Seventh Circuit has determined that a debtor may be a fiduciary even in the absence of an express trust if there is a "difference in knowledge or power between fiduciary or principal which...gives the former a position of ascendancy over the latter" . *In re Marchiando*, 13 F.3d 1111, 1115-16 (7th Cir. 1994); *Frain*, 230 F.3d at 1017. See also, *In re Woldman*, 92 F.3d 546, 547 ( 7th Cir 1996) ("section 523(a)(4) reaches only those fiduciary obligations in which there is substantial inequality in power or knowledge in favor of the debtor seeking the discharge and against the creditor resisting discharge"). However, even if there is "inequality in power or knowledge", the fact remains that the fiduciary's obligation must exist prior to the wrongdoing. *Marchiando*, 13 F.3d at 1116.

13. It is not enough for the debtor to be a fiduciary. The debtor must also commit "fraud or defalcation" in his fiduciary capacity. "Fraud" for purposes of this section involves intentional deceit and "defalcation" has been defined as "a failure to account for money or property that has been entrusted to another". *Hanson*, 432 B.R. at 774-75. "Defalcation" involves tortious conduct which is more than mere negligence but less than fraud. *Id*.

14. A debt is nondischargeable under §523(a)(4) even if the debtor is not a fiduciary but is indebted to the creditor as a result of the debtor's "embezzlement" or "larceny". "Embezzlement" is the "fraudulent appropriation of property by a person to whom such property has been entrusted or into whose hands it has lawfully come". *In re Weber*, 892 F.2d 534, 538 (7th Cir. 1989). Proof under this prong of §523(a)(4) requires that (1) the debtor appropriated the subject funds for his own benefit and (2) the debtor did so with fraudulent intent or deceit". *Id*. "Larceny" under §523(a)(4) requires a showing that the debtor wrongfully took property from its rightful owner with fraudulent intent to convert such property to his own use without the owner's consent. *Scarpello*, 272 B.R. at 703. Embezzlement differs from larceny in that embezzlement requires that the initial taking of property was lawful or with the consent of the owner whereas larceny requires a felonious intent at the time the property was taken. *Id*.

### *523(a)(6)*

15. Section §523(a)(6) excepts from discharge a debt for willful and malicious injury by the debtor to another entity or to the property of another entity. To obtain a

determination of nondischargeability under Section 523(a)(6), a creditor must prove: (a) that the Debtor intended to and caused an injury; (b) that the Debtor's actions were willful; and (c) that the Debtor's actions were malicious. *In re Carlson,* 224 B.R. 659, 662 (Bankr. N.D. Ill. 1998); *Scarpello*, 272 B.R. at 704.

16. With respect to the "willful" requirement under this section, mere proof that the act that caused injury was "willful", with nothing more, is insufficient to prove nondischargeability under Section 523(a)(6). Rather, "willful" for purposes of this section means intent to cause injury, not merely the commission of an intentional act that leads to injury, as the United States Supreme Court has held in *Kawaauhau v. Geiger*, 523 U.S. 57,61, 118 S.Ct. 974, 140 L.Ed.2d 90 (1998). Under this approach, it is not enough for acts to be intentional; the act must be specifically calculated to cause the underlying injury. The *Geiger* court clearly eliminated the possibility that "willful" encompasses negligence or recklessness. ("We hold that debts arising from recklessly or negligently inflicted injuries do not fall within the compass of Section 523(a)(6)" 118 S.Ct. at 978). [2] So, for an "injury" to be "willful" for §523(a)(6) purposes, "the debtor must have intended the consequences of her act." *Scarpello*, 272 B.R. at 704.

---

[2] In *Kawaauhau*, the Supreme Court noted that the more "encompassing interpretation" of "willful" which the petitioner urged but which the Court rejected included "a wide range of situations in which an act is intentional, but injury is unintended, i.e. neither desired nor in fact anticipated by the debtor" such as a "knowing breach of contract" . 118 S.Ct. at 977. See also, *In re Kraye (Kraye v. Lexington Health Care Center of Chicago Ridge, Inc.)*, 1998 WL 775654 (Bankr. N. D. Ill., November 6, 1998) and cases cited therein. See also, *In re Miller (Miller v. J.D. Abrams Incorporated)* 156 F.3d 598 (5th Cir. 1998) where, after a lengthy analysis of the *Kawaauhua* opinion, the Fifth Circuit Court of Appeals held that "an injury is willful and malicious under Section 523(a)(6) "where there is either an objective substantial certainty of harm or a subjective motive to cause harm". 156 F.3d at 606.

17. Admittedly, courts have had problems in applying *Geiger's* "willful" standard in that "*Geiger* seems to have created almost as much consternation as it set out to resolve. In part, this is because the Court never said what 'willful' is; only what it is not – it is not negligence, recklessness or a breach of contract". *ABF, Inc. v. Russell (In re Russell)*, 262 B.R. 449, 453 (Bankr. N. D. Ind. 2001). The "intent" required for an act to be "willful" can be satisfied by a showing of a debtor's subjective knowledge that injury was substantially certain to result from his acts. *Fidelity Financial Services v. Cox (In re Cox)*, 243 B.R. 713,719 (Bankr. N D. Ill. 2000); *Scarpello*, 272 B.R. at 704.

18. "Malicious" for §523(a)(6) purposes means "in conscious disregard of one's duties or without just cause or excuse..." although a debtor does *not* have to act with ill will or specific intent to do harm. *In re Thirtyacre*, 36 F.3d 697, 700 (7th Cir. 1994). Section 523(a)(6) is applied solely to tort causes of action. *In re Calclazier*, 134 B.R. 29, 33 (Bankr. W.D. Okla. 1991).

### *The Debt is Nondischargeable Under Section 523(a)(2)(A)*

19  Erik, in his own behalf, signed the Notes, all of which respectively recited that repayment of them was secured by mortgages on the 46th Street Property, the Ada Lane Property, the Somerset Property and the Perry Property (collectively, "the Properties"). By this recitation, Erik knew that Mike intended for the Notes to be secured by mortgages on the Properties.

20. Erik failed to disclose to Mike that the Notes were not secured by mortgages on the Properties. By this omission, Erik gave Mike the false impression that repayment

13

of the Notes was sufficiently collateralized when they were not. Mike justifiably relied on this false representation to his detriment because other intervening parties subsequently obtained mortgages on the Properties when Mike actually had no mortgage on them even though he believed he had. Furthermore, Erik simply defrauded Mike by not securing the Notes with mortgages on the Properties. Thus, whether it be by "false representations" or the less stringent test of "actual fraud", the debt owed to Mike by Erik is nondischargeable under Section 523(a)(2)(A).

### *The Plaintiff's Nondischargeability Claims under Sections 523(a)(4) and (a)(6) Fail*

21. Neither the complaint nor the oral argument at the damages hearing on August 27th gives rise to a finding that Erik was acting in a fiduciary capacity. Erik did not assume the role of fiduciary merely because he induced Mike to loan money to purchase the Properties. There is no evidence in the record to suggest that Erik and Mike were in a partnership wherein they would have owed each other and the partnership fiduciary duties. See, *In re Rueth Development Co.*, – N.E.2d –, 2012 WL 3294982 (Ind App. 2012). Mike has failed to show either that there was an express trust between the parties or that there was a difference in knowledge or power between he and Erik which gave Erik a position of ascendancy over him. Furthermore, Mike has not alleged the "embezzlement" or "larceny" prongs of Section 523(a)(4) and therefore his Section 523(a)(4) claim fails.

22. Likewise, neither the complaint nor the oral argument at the damages hearing on August 27th gives rise to a finding that Erik willfully and maliciously converted property in which Mike held an interest under Section 523(a)(6). Since none of the

Notes were secured by mortgages on the Properties, it is questionable whether Mike had a "property interest" in the Properties for Section 523(a)(6) purposes. Regardless, nothing in the record suggests that Erik had the requisite intent to cause injury or that his actions were willful and malicious and specifically calculated to cause the underlying injury.

### *Damages*

23. The Court has found that Erik's actions constitute fraud for Section 523(a)(2)(A) purposes. Mike argues that Erik's actions likewise constitute fraud under Indiana Code Section 35-43-5-4(8) which provides that a person who, with intent to defraud the person's creditor or purchaser, conceals, encumbers, or transfers property, commits fraud. If Erik's actions fall under this statute, Mike is eligible to recover treble damages under Ind Code §34-24-3-1 which allows a person who suffers a pecuniary loss as a result of a violation of Indiana Code Section 35-43 to recover three times his damages, the costs of the action, and reasonable attorney's fees.

24. The Court concludes that Erik's actions fall under Ind Code §35-43-5-4(8). This section addresses situations where debtors effectively remove property from a creditor's reach in order to hinder the creditor from recovering the debt owed to them by the debtor. Erik effectively removed the Properties from Mike's reach by encumbering them and granting mortgages to third parties, limiting Mike's ability to recover on the Notes. Thus, the Court finds and concludes that Mike is entitled to an award of treble damages pursuant to Indiana Code Section 35-43-5-4(8) and Indiana Code Section 34-24-3-1. Treble damages, however, are

15

within this Court's discretion to award and there is no absolute entitlement to an award of treble damages under Ind Code §34-24-3-1 *Ballard v. Harman*, 737 N.E.2d 411, 418, n.5 (Ind. Ct. App. 2000).

25. The Notes all provided that Erik personally guaranteed payment of not only the amounts due under the respective notes, but also "any collection costs, including attorney's fees". Based on the evidence presented, the Court finds that Mike incurred attorneys' fees of $23,093.20. Thus, these sums, in addition to the amounts owed on the notes, and any treble damages awarded, are included in the amounts that are nondischargeable under Section 523(a)(2)(A). See, *In re Peters*, 2012 WL 1035916 (Bankr. S. D. Ind.)

26. On or about December 7, 2010, Mike filed a Complaint against Erik, CRES, and 3 Oaks in the Hamilton County Superior Court of Indiana, designated as Cause No. 29D01-1012-PL-1573 (the "Civil Lawsuit"). After accounting for accrued interest and payments made through December 31, 2010, Mike sought the following damages against Erik in Counts 1 through 4 of his Complaint:

    (A)    $61,067.00 plus daily interest of $19.40 starting on January 1, 2011, on the 46th Street Note;

    (B)    $112,000.00 plus daily interest of $32.88 starting on January 1, 2011, on the Ada Lane Note;

    (C)    $89,600.00 plus daily interest of $26.30 starting on January 1, 2011, on the Somerset Note; and

(D) $48,300.00 plus daily interest of $17.26 starting on January 1, 2011, on the Perry Note.

27. The Court takes notice that 235 days elapsed from January 1, 2011, to the date of Erik's bankruptcy petition on August 24, 2011. Mike incurred $308.85 in costs to depose Erik in the Civil Lawsuit. Consequently, as of the date of Erik's petition for bankruptcy and excluding costs and attorney fees, the Court finds that Mike's damages were $310,967.00, plus $22,522.40 in interest on the four Notes from January 1, 2011, through August 24, 2011, plus $308.85 in court reporter fees, for a total of $333,798.25.

### *Judgment*

28. The Court concludes that an award of damages equal to twice the amount of Mike's actual damages is appropriate. Therefore , IT IS ORDERED, ADJUDGED AND DECREED THAT judgment be and now is entered in favor of Plaintiff, Mike Sherman, and against Defendant, Erik Joel Robinson, in the amount of $667,596.50 plus $23,093.20 in attorney fees, and $462.00 in costs for a total of $691,151.70, plus post-judgment interest at the statutory rate from the date that default judgment was originally entered in this cause on May 10, 2012. This judgment is nondischargeable pursuant to 11 U.S.C. Sections 523(a)(2).

# # #

Distribution:

Robert S. Grimm
KATZMAN & KATZMAN
The Pyramids
3500 DePauw Blvd., Ste. 2100
Indianapolis, IN 46268

Erik Joel Robinson
11656 Wedgeport Lane
Fishers, IN 46037

Courtesy copy to:
John T. McManus
McManus & Associates, L.L.C.
11703 Maple St.
Fishers, IN 46038